## PEOPLE *v.* BARONDESS.

EXTORTION—PENAL CODE, §§ 552, 553, SUBD. 1—INJURY
TO BUSINESS.

Obtaining money from another with his consent induced by a threat
  to injure the business of the individual threatened, by persuad-
  ing his employees to absent themselves from work, is extortion
  under sections 552 and 553, subd. 1, of the Penal Code.
In the trial of defendant for extortion, it appeared by the evidence
  on both sides that he was substantially the representative of strik-
  ing workmen and made propositions on their behalf to their
  employers.    To show what demands were made by defendant on
  behalf of the strikers, evidence was given of what was said at
  one of their meetings in reference to the conditions upon which
  they would resume their employment.—*Held*, that such testi-
  mony was proper for the purpose of showing what they insisted
  upon and what the defendant endeavored to secure on their be-
  half.
The conclusion of the jury as expressed in their verdict will not be
  interfered with by the appellate court unless the preponderance
  of evidence is so great as to indicate either misunderstanding of
  the case or the influence of prejudice, passion or corruption.

Appeal by the people from an order of the general
term of the supreme court, in the first department, revers-
ing a judgment entered upon conviction of defendant,
Joseph Barondess, at the court of oyer and terminer of
New York county.

The opinion of the general term and the dissenting opinion of Judge DANIELS will be found at 8 *N. Y. Criminal Reports*, 234, where the facts are also fully stated.

The judgment of the general term was reversed by the court of appeals upon the dissenting opinion of Judge DANIELS, and no opinion was written by the judges, as follows :

PER CURIAM. " Order of general term reversed, and judgment of conviction affirmed, on opinion of DANIELS, J., below."

EARL, C.J., ANDREWS, FINCH and PECKHAM, JJ., concur.

GRAY, J., reads for affirmance of general term. O'BRIEN and MAYNARD, JJ., concur.

A dissenting opinion was written by Judge GRAY, as follows :

GRAY, J. (dissenting).—The defendant was charged, in the language of this indictment, with the crime of extortion, in having obtained a check for $100 from Popkin & Marks, with their consent, through a wrongful use of fear, induced by a threat made to do an unlawful injury to their property ; that is to say, to injure and destroy their business, and to prevent and hinder them from carrying on the same. Section 553 of the Penal Code provides that " fear, such as will constitute extortion, may be induced by a threat (1) to do an unlawful injury to the person or property of the individual threatened," etc. The facts in evidence upon the trial upon which the prosecution relied can be sufficiently stated within a brief compass. Popkin & Marks were a firm of cloak-manufacturers in New York city, employing a number of workmen in their business, who were connected with a

laborers' union. For some time prior to February 9, 1891, the firm had had disputes with their workmen, concerning the terms and conditions of their employment, and at one time non-union persons were employed. The defendant was the president or manager of the laborers' union, and represented these workmen in treating with the firm. On February 9, 1891, an arrangement between the firm and a committee of the workmen was reached, under which the non-union men were to be discharged, and the former workmen of the firm were to resume work the next morning, on terms of service agreed upon. The next day the workmen did not return to work, but during the morning the defendant called, accompanied by the committee of the workmen, and demanded that the firm should first settle with him. He stated to the firm that they would have to pay him $500 to have their people back again to work. Popkin demurred to this demand. Defendant then reduced the demand to $300, and said if that was not paid the firm could not have their people back again to work. Popkin again refused, and defendant, with his companions, thereupon left the premises. Subsequently one Zipkin, of the workmen's committee, returned, and saw Marks, the other partner, and between them it was arranged that $100 should be paid. Zipkin went out and brought back the defendant and others. The defendant said he would accept the $100, and it was paid to him by a check, upon which he received the money. The demand for the money was with the knowledge and support of the workmen, and defendant testified that he had told Popkin that the money demanded was for distribution among the workmen; the explanation being given that it was to compensate for lost time. After the conviction of the defendant, Presiding Justice VAN BRUNT, of the general term, in the first department, before whom the defendant had been tried at the oyer and terminer, certified that, in his opinion, there was reasonable

doubt whether the conviction should stand, and admitted the defendant to bail, pending his appeal. At the general term Justices BARRETT and INGRAHAM concurred in ordering a reversal of the judgment of conviction for errors of law. Opinions were delivered by each of the justices, in which two grounds are stated upon which they deemed conviction to have been unwarranted in law. They held that, as a threat to injure the business or estate of the complainant, it was not a criminal offense within the meaning or definition of the Penal Code. The argument for this conclusion was that a threat to injure the business of another—that is, to reduce or to prevent the making of gains—operated not upon some specific and tangible thing, but upon invisible and non-objective property, the existence of which would have to be proved by independent evidence. Such an injury threatened to business would be actionable under the Civil Code, which defines an injury to property as an act whereby the estate of another is lessened; but that definition is absent from the Penal Code, and because of its omission, and of the definition of " property " given in the Penal Code, it must be supposed that the legislature intended to limit indictable wrongs to injuries done to personal property, as such property is defined by the Penal Code. It was considered that the statute does not deal with such possibilities or probabilities as are involved in a mere threat to injure business, but contemplates the punishment of acts which menace directly material and specific property, and in the same way that the person could be menaced with injury. The reasoning of the learned justices upon this question of the construction of the statute is able, and not without much that is forcible, and, perhaps, difficult of ready refutation; but, in our view, it is not altogether conclusive. I do not think that we should so restrict the meaning of the term " property " in the section as to confine its application only to specific or visible objects. The absence

in the Penal Code of that broader definition in the Civil Code is not of such significance as to control, or to have such force as to impair the protection which the statute would extend to and about property of persons, if that word were allowed that full and comprehensive legal meaning which it has long received.   In its general sense, the personal property of an individual is understood to include what is intangible, such as choses in action and all subjects of property not of a freehold nature, as well as tangible, physical objects (2 *Kent, Comm.* 340).   To carry on a lawful business or trade is but the practical exercise of that right to the free use and acquisition of property which is secured to all by the constitution, and any interference with such a right, by unlawful means, should be deemed an unlawful injury to property.

We are not inclined to go with the learned justices below as far as their reasoning has led them upon the subject of what property is afforded protection from injury under this section.   We think that, if here there was a threat to do some unlawful injury to the complainant's business, it involved the subject of property, and the conviction would have been proper.   But the judgment of the general term does not depend for its maintenance upon the correctness of the view taken as to what "property" comprehends as used in the section. The further ground taken by them in reversing the conviction is, I think, one that is impregnable.   Assuming that property was in fact the subject of possible injury, was the threat one to do an unlawful injury ?   The question requires us to say whether the remark or threat of defendant induced the fear of consequences from an act which, for involving something forbidden in, or provided against by, the penal law, would be unlawful.   That a civil action would lie, within the provisions of the Civil Code and at the common law, at the suit of one against him who has interfered between the complainant and those employed by or under contract with him, so as to

cause actual damage to the business or estate of the complainant, may be conceded. The cases cited by the district attorney are those where such civil actions were brought and maintained. But, to be punishable under the Penal Code, the act of the defendant must be shown to be one which constitutes a crime ; and a crime is defined by the Code as " an act or omission forbidden by law." Therefore, unless the defendant committed or threatened to commit an act forbidden by law, he cannot be said to have rendered himself amenable to punishment at the suit of the people. He did not threaten to do anything personally to the firm of Popkin & Marks, but simply made the statement or threat, in effect, that, unless his demand was complied with, their men would not return to work. There was no attitude of intimidation assumed by defendant or by the workmen towards the firm, other than was presented by this demand for a payment of money. There is no evidence that the workmen were, or had been, under any contract with Popkin & Marks, which was to be broken by defendant's procurement. It cannot be said with any degree of correctness that they were not at liberty to stand out for such terms and upon such conditions as to re-employment as they chose to demand. There is no question of a conspiracy ; for, as pointed out by Judge BARRETT, an orderly and peaceable assembling or co-operation of persons employed in any trade, etc., for the purpose of obtaining an advance in wages or compensation, is excepted by section 170 of the Penal Code from the definitions of conspiracies cognizable by it. If there was nothing unlawful, therefore, in the refusal of the workmen to return to work for their former employers, or in their co-operation to secure that return upon their own terms, how can the statement or threat of the defendant be deemed to be one to do an unlawful injury ? He was the representative of the workmen, and, according to his testimony, in preferring the demand for a payment of the $100

was acting for the workmen. Certainly we must assume his demand to have been authorized by them. Upon the evidence in this record the whole effect which could be claimed for this threat of the defendant would be that, unless there was paid to him the sum stated, he would advise the former workmen not to go back to work. That was, in effect, and at most, a threat to use his influence over the men. But, if so, then what was the influence to accomplish? Nothing more, certainly, than that those particular men would continue their attitude of refusal to re-enter the employment of Popkin & Marks, —an attitude of co-operation, which was voluntary with them, and was not contrary to or forbidden by any law. The distinction, which I think is not to be lost sight of, consists in this : that, however reprehensible and morally offensive the conduct of the defendant and of the workmen was, the attitude of the workmen in holding out until there was compliance with their further demands was not unlawful, as being something reprehended or forbidden by the law ; and, therefore, for the defendant to threaten that that attitude would continue, unless the demand preferred by him was met, was not to do an act leading to any unlawful injury. As pointed out by Justice INGRAHAM, there are many ways in which a person, in the exercise of a strictly legal right, could cause injury to the property of another without entailing any penalty or liability thereby.

If the attitude of the former workmen in refusing to re-enter their employment was not an act condemned by the statute, it could not be a criminal act for the defendant, as their representative, to threaten that he would advise or cause its continuance. If they had the right to agree to stand out for their terms, the defendant ought not to be punished for representing that they would do so, even if through his influence. In my opinion, assuming all that the prosecution claims, there was here no commission of an act cognizable by the criminal law as

an offense subjecting the person to punishment, and, if none, then the court should not have held the defendant. That we should condemn the act of the defendant as highly offensive, speaking morally, is natural and just ; but courts must administer the law as it is written in the statute, and they should not mete out punishment where none has been plainly provided for. In courts of justice the law should protect all against a condemnation which is not prescribed for the act proved. For us to hold that the defendant's conviction was justified by evidence establishing the commission of an act forbidden by the law I think will require us to stretch unduly these provisions of the Penal Code. Such a result might satisfy the moral sense, but that is not what this court sits to accomplish.

For the reasons given the order appealed from should be affirmed.

Order of the general term reversed, and judgment of conviction affirmed.